**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **DIRECTV, INC.,** | * |
| | * |
| v. | * |
| | *   Civil Action No.: AW 03-1310 |
| **TERRY BALTIMORE,** *et al.*, | * |
| | * |

## MEMORANDUM OPINION

Currently pending before the Court is Plaintiff DIRECTV's Renewed Motion for Default Judgment alleging violations of the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et. seq.* ("Cable Communications Act"), the Electronic Communications Policy Act of 1986, 18 U.S.C. § 2510 *et. seq.* ("Wiretap Act"), and common law. The claims in this case arise from Defendants' alleged use of one or more pirate devices to receive DIRECTV's satellite television service. For the reasons set forth below, DIRECTV's motion is granted and a default judgment will enter in favor of DIRECTV against each Defendant.

## FACTUAL & PROCEDURAL BACKGROUND

DIRECTV provides satellite television programming to homes and businesses throughout the United States on a subscription and pay-per-view basis. In order to prevent illicit interception of its satellite transmissions, DIRECTV uses encryption technology to scramble the signal. Each DIRECTV customer is required to purchase system hardware and an access card—which together function as de-scramblers—in order to view the programming for which they have paid and only that programming. Despite these measures of protection, satellite television pirates have found ways to modify their access cards so as to view DIRECTV programming without paying for it. To counter this, DIRECTV has developed electronic countermeasures (ECMs), which are streams of data, sent along with the satellite signal, to target and disable modified access cards. In turn, however, the pirates have responded with a variety of pirate-access devices that restore their modified access cards'

ability to gain unauthorized access to DIRECTV's programming. As a result, DIRECTV is deprived of its subscription fees.

DIRECTV filed a complaint alleging that Defendants purchased numerous pirate-access devices to intercept and decrypt DIRECTV's protected satellite communications without authorization or payment, in violation of 47 U.S.C. § 605 and 18 U.S.C. § 2511. Defendants were served. Because of Defendants' failure to plead or otherwise defend this action in any way, the Clerk, pursuant to Federal Rule of Civil Procedure 55(a), entered default against each of them. This failure authorizes the Court to enter a default judgment. *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992). DIRECTV now moves for such judgment, seeking damages, attorneys' fees, costs and injunctive relief. Once again, Defendants did not respond to DIRECTV's motions.

In *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001), the Fourth Circuit held that in a case such as this, "'[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact,'" but that "'[t]he defendant is not held . . . to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Id.* at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Accordingly, the Court must examine Defendants' liability under the various causes of action alleged in DIRECTV's complaint. *See* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed.1998) (noting that "even after default, . . . it remains for the court [to determine] whether the unchallenged facts constitute a legitimate cause of action, since a party does not admit mere conclusions of law.").

## DISCUSSION

**A.     Liability**

DIRECTV has not been consistent in identifying the provisions of the relevant statutes it claims were violated. DIRECTV's complaint alleged violations of 47 U.S.C. § 605(a) and (e)(4) and 18 U.S.C. §§ 2511 and 2512, and its prayer for relief requests damages in accordance with those statutory violations. DIRECTV's motions for default judgment, however, seek damages only for violations of § 605(e)(4) and § 2511. Notwithstanding the omission of § 605(a) from the current motions, the Court will hold DIRECTV to its invocation of that provision in the complaint.[1]

Section 605(e)(3) of the Cable Communications Act provides a civil remedy for any person aggrieved by violations of § 605(a) or (e)(4).[2] Count One of DIRECTV's complaint alleges a violation of § 605(a). This section of the Communications Act states that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). DIRECTV alleges that Defendants

---

[1] This action is one of DIRECTV's numerous lawsuits targeting purchasers of pirating devices all across the country. The recent decisions reached by some district courts may explain why DIRECTV's pleadings and memoranda are inconsistent. For instance, DIRECTV's complaint alleged a violation of 18 U.S.C. § 2512(1)(b), but DIRECTV does not reiterate this allegation in its motions for default judgment. District courts across the nation have repeatedly considered the question whether § 2520(a) provides a private right of action under § 2512(1)(b), with a number of courts concluding that it does not. *Compare DIRECTV, Inc. v. Treworgy*, 373 F.3d 1124 (11th Cir. 2004) (no private right of action); *DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d. 1259 (D. Kan. 2003) (same); *DIRECTV, Inc. v. Lewis*, 2004 WL 941805 (W.D.N.Y. Jan. 6, 2004) (same); *DIRECTTV, Inc. v. Westendorf*, 2003 WL 22139786 (N.D. Ill. Sep. 16, 2003) (same), *with DIRECTV, Inc. v. Perez*, 279 F. Supp. 2d 962 (N.D. Ill. 2003) (private right of action available); *DIRECTV, Inc. v. Calamanco*, 2003 WL 21956187 (N.D. Iowa Jan. 21, 2003) (same). Significantly, many of those recent decisions have cited the Fourth Circuit in support of the proposition that § 2520(a) does not provide a private cause of action for violations of § 2512(1)(b). *See, e.g., DIRECTV, Inc., v. Boggess*, 300 F. Supp. 2d 444 (S.D. W. Va. 2004) (determining that the Fourth Circuit's conclusion that § 2520 does not provide a private right of action for violations of § 2512 has not been superseded by amendments to § 2520) (citing *Flowers v. Tandy Corp.,* 773 F.2d 585 (4th Cir. 1985)); *DIRECTV, Inc. v. Adrian*, 2004 WL 1660665 (N.D. Ill. Jul 22, 2004) (finding no private right of action for possession under § 2512(1)(b)); *but see DIRECTV, Inc. v. Dillon*, 2004 WL 906104 (N.D. Ill. Apr. 27, 2004) (calling into question the continued viability of the holding in *Flowers*). Because this Court has not been called upon to do so, it will not address the question whether a private right of action is available for violations of 18 U.S.C. § 2512(1)(b).

[2] Under 47 U.S.C. § 605(e)(3)(C)(i), damages are to be computed, "at the election of the aggrieved party," in accordance with either of the following:

> (I) . . . actual damages suffered by him as a result of the violation and any profits of the violator . . . ; or
> (II) . . . statutory damages for each violation of subsection (a) . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of subsection [(e)](4) . . . statutory damages in a sum of not less than $10,000, or more than $100,000, as the court considers just.

3

purchased pirate-access devices using interstate or foreign wire facilities and received them via the Postal Service or commercial mail carriers.[3] Drawing all reasonable inferences in DIRECTV's favor, this Court concludes from Defendants' possession of pirate-access devices that they received DIRECTV's signal without authorization. *See*, *e.g.*, *DIRECTV, Inc. v. Cardona*, 275 F. Supp. 2d 1357, 1362 (M.D. Fla. 2003) ("[P]ossession of equipment used to intercept satellite transmissions . . . is evidence that satellite transmissions were in fact intercepted."). Accordingly, the Court finds that Defendants intercepted DIRECTV's satellite communications in violation of § 605(a).

DIRECTV also contends that Defendants violated § 605(e)(4). That provision refers to "[a]ny person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services." 47 U.S.C. § 605(e)(4). DIRECTV avers that Defendants "engaged in the business of manufacturing, assembling, modifying, importing, exporting, distributing, and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that such devices are primarily of assistance in the unauthorized reception and use of DIRETV's satellite transmissions of television programming" and that Defendants "knew or should have known that manufacturing, assembling, modifying, importing, exporting, distributing and/or selling illegal satellite signal theft devices . . . was and is illegal and prohibited."

As discussed above, Defendants' defaults should not be treated as an absolute confession of liability and of DIRECTV's right to recover. *See Ryan*, 253 F.3d at 780. Rather, the Court must assess whether the well-pleaded facts, which Defendants admitted by operation of their defaults,

---

[3] DIRECTV executed several writs of seizure upon the business shipping facilities of major sources of pirate technologies. During and subsequent to these raids, DIRECTV came into possession of evidence, including orders and invoices, showing that Defendants illegally purchased the pirate-access devices.

support the relief sought. *Id*. Here, the relevant fact is that each Defendant purchased dozens of pirate-access devices. DIRECTV alleges that the sheer number of devices purchased by each Defendant raises a strong inference that these purchases were made not for personal use but rather were for resale to others to assist them in intercepting satellite transmissions.

Other courts have found, and this Court agrees, that § 605(e)(4) exempts individual users but targets manufacturers and distributors. *DIRECTV, Inc. v. Getchel*, 2004 WL 1202717, at *3 (D. Conn. May 26, 2004) (citing *DIRECTV, Inc. v. Albright*, 2003 WL 22956416, at *2 (E.D. Pa. Dec. 9, 2003)). Based on Defendants' purchase of dozens of interception devices, the Court finds that each Defendant engaged in an enterprise to distribute and/or resell the devices, and is thus liable for a violation of § 605(e)(4).

Count Five of the complaint invokes the Wiretap Act, 18 U.S.C. § 2511. Section 2511(1)(a) is a criminal statute providing that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be fined and/or imprisoned. Section 2520(a) provides a private right of action for a violation of § 2511, stating that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." *See DIRECTV, Inc. v. Nicholas*, 2005 WL 844945 (4th Cir. 2005) (holding that the plain language of §§ 2511 and 2520 allows for a civil action against a defendant for interception of encrypted transmissions). DIRECTV alleges that Defendants "intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmissions of television programming." The Court finds that Defendants, by default, admit that they intercepted

DIRECTV's electronic communication in violation of § 2511 and are thus liable as to DIRECTV's private action under that section.

### B. Damages

Having found that Defendants are liable to DIRECTV for violations of 47 U.S.C. § 605(a), § 605(e)(4), and 18 U.S.C. § 2511(a), the Court must determine the damages to be awarded. Where, as here, the Defendants do not contest the damages requested and they are readily ascertainable, no hearing is necessary. The Court can rely upon the statutes, affidavits, and other supporting documentation in assessing damages and reasonable attorneys' fees. *See* Fed. R. Civ. P. 55(b)(2); *Pope v. United States*, 323 U.S. 1 (1944) (upon default, the court can compute damages from facts of record); *see also HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908 (1st Cir. 1988); *United States v. DeFrantz,* 708 F.2d 310 (7th Cir. 1983); *Southern Gen. Ins. Co. v. O'Keefe*, 275 F. Supp. 107 (D. Md. 1967).

Violations of § 605(a) and (e)(4) of the Communications Act are calculated in accordance with § 605(e)(3)(C)(i), which states in relevant part that damages are to be computed, "at the election of the aggrieved party," in accordance with either of the following:

> (I) . . . actual damages suffered by him as a result of the violation and any profits of the violator . . . ; or
>
> (II) . . . statutory damages for each violation of subsection (a) . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of subsection [(e)](4) . . . statutory damages in a sum of not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i). The statute also allows the court to decrease the award of statutory damages to not less than $250 if the court "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of § 605." 47 U.S.C. § 605(e)(3)(C)(iii). Alternatively, the statute also allows for enhanced damages of not more than $100,000, "for each violation of subsection (a)," if the

court finds that the violation to have been committed willfully and for direct or indirect commercial advantage or for private financial gain. *See id.* § 605(e)(3)(C)(ii).

Courts have great discretion in awarding statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i). *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 286 (D. Conn. 2001) (holding that the specific amount of statutory damages assessed pursuant to § 605(e)(3)(C)(i)(II) rests within the sound discretion of the Court); *see also DIRECTV v. Decroce*, 332 F. Supp. 2d 715, 721 (D.N.J. 2004) (finding that 605(e)(3)(C) gives the court considerable latitude in assessing damages according to the specific facts of the case). Courts consider "both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions." *Nat'l Satellite Sports, Inc. v. Garcia*, 2003 WL 21448375, at *2 (N.D. Tex. Jun 18, 2003). As such, courts have considered a number of factors in determining a just imposition of statutory damages for violations of § 605(a):

> (1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct; and (5) whether the damage award is comparable to awards in similar cases.

*DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131 (M.D. Ala. 2004) (citations omitted). Similarly, courts have considered the following factors in making a § 605(e)(4) damage assessment:

> [(1)] the pecuniary loss sustained by the victim as the result of the offense, [(2)] the financial resources of the defendant . . . [(3)] the financial needs and earning ability of the defendant . . . as well as [(4)] the burden a damage award would impose on the defendant relative to the burden alternative relief would impose.

*TWC Cable Partners d/b/a Staten Island Cable v. Bravo*, 1996 WL 933863, at *4 (E.D.N.Y. Mar. 29, 1996) (citation omitted) (finding that the defendant sold seven illegally modified converters; he was not engaged in a large scale scheme to defraud plaintiff, and the goals of punishment, restitution and deterrence were met by imposing minimum statutory damages of $10,000 for each violation of

§ 605(e)(4)). These factors are separate and apart from § 605(e)(3)(C)(ii)'s authorization to award damages based on willfulness or commercial or financial gain. *Id*.

Violations of § 2511 of the Wiretap Act are calculated in accordance with § 2520(c)(2), which states in relevant part that "the court *may* assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2) (emphasis added). In the Fourth Circuit, the decision to award any damages at all under § 2520(c)(2) is discretionary. *Nalley v. Nalley*, 53 F.3d 649, 651 (4th Cir. 1995) (finding that § 2520(c)(2) embodies a congressional intent to grant courts the discretion to decline to award damages). As stated by the *Nalley* Court, a close reading of 18 U.S.C. § 2511 "reveals that it does not mandate that every violator of the Act be punished." *Id*. at 652; *see also Reynolds v. Spears*, 93 F.3d 428, 434-35 (8th Cir. 1996) (Court adopts the rationale of *Nalley*, saying "We think it logical that Congress chose to make the award of such damages discretionary, given the potential of the law to bring financial ruin to persons of modest means, even in cases of trivial transgressions."). Other courts have come to the same conclusion. *See*, *e.g.*, *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004); *DIRECTV, Inc. v. Perrier*, 2004 WL 941641, at *4 (W.D.N.Y. Mar. 15, 2004). The following factors are often considered by courts exercising their broad discretion under Section 2520(c)(2):

> (1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of DIRECTV's financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct.

*Huynh*, 318 F. Supp. 2d at 1132 (citations omitted).

On the facts of this case, the Court finds that a statutory award of $1,000 in damages for the violation of § 605(a) and $10,000 per access device for violations of § 605(e)(4) is just. Within the

exercise of its discretion, there is no statutory authority for the Court to award less than the statutory minimum because there is no evidence that Defendants were not aware or had no reason to believe their acts violated § 605. Moreover, the sheer number of devices purchased by Defendants evidences Defendants' knowledge of their actions.

With regard to the § 605(a) violation, no more than the minimum statutory $1,000 shall be awarded. First, DIRECTV has shown that Defendants would not need more than one device for personal use. Thus, there is a strong inference, and the court finds, that only one of the devices was for personal use and the rest were to assist others in intercepting transmissions. Consequently, the Court infers a single violation of § 605(a). The minimum statutory award of $1,000 for this violation will be sufficient when coupled with the § 605(e)(4) damages award.[4] The total sum of damages will run into the tens of thousands of dollars; a sum that will compensate DIRECTV adequately for its loss, punish Defendants, and easily serve as a sufficient deterrent to others. *See DIRECTV v. McDougall*, 2004 WL 2580769 (W.D. Tex. Nov. 12, 2004) (finding that DIRECTV had only alleged that one unauthorized interception was made in violation of § 605(a) and awarding the minimum statutory $1,000 award), *rev'd on other grounds*, 2005 WL 1870775 (5th Cir. Aug. 9, 2005).

With regard to the § 605(e)(4) violation, courts that have addressed damages under this section have awarded the statutory minimum of $10,000 per device. *See e.g. DIRECTV v. Adkins*, 320 F. Supp. 2d 474, 476-77 (W.D. Va. 2004) (awarding damages of $10,000 per device); *Cablevision of S. Conn., Ltd. P'ship*, 141 F. Supp. 2d 277 at 287 (same); *DIRECTV v. Graham*, 2005 WL 427512 (D. Kan. Feb. 16, 2005) (same); *DIRECTV v. Galasso*, 2005 WL 483157 (W.D. Va. Feb. 24, 2005) (same); *McDougall*, 2004 WL 2580769, at *5 (same); *Bravo*, 1996 WL 933863, at *4 (same). The only variance lies in

---

[4] Each of the pirate-access devices purchased by Defendants constitutes a separate violation of § 605(e)(4). *DIRECTV v. Galasso*, 2005 WL 483157, *2 (W.D. Va. Feb. 24, 2005).

whether the court assumes that one of the devices was intended for personal use; if so, that device is not assessed at $10,000. *See Cablevision of S. Conn., Ltd. P'ship*, 141 F. Supp. 2d at 287 (concluding that defendant sold or distributed 19 of the 20 decoders, excluding the one decoder employed for personal use); *McDougall*, 2004 WL 2580769, at *5 (finding that defendant resold or distributed seven of the eight devices he purchased). Other courts have multiplied the $10,000 minimum statutory figure by the total number of devices. *Adkins*, 320 F. Supp. 2d at 477 (granting DIRECTV an award of $10,000 per device for a total award of $2,050,000 against defendant); *Graham*, 2005 WL 427512, at *4 (determining that defendant's purchase of two devices warranted a $20,000 award).

Here, the Court infers that Defendants were end users as well as resellers. Thus, the Court finds that each Defendant devoted one of the devices to personal use. Moreover, not more than $10,000 per distributed device should be awarded because Defendants were not engaged in a large scale, sophisticated and long-running scheme to defraud DIRECTV. *Bravo*, 1996 WL 933863, at *4; *see also Cablevision of S. Conn., Ltd. P'ship*, 141 F. Supp. 2d at 287 (recognizing the seriousness of defendant's violations but declining to award enhanced damages in excess of $10,000). Consequently, the goals of punishment, restitution and deterrence are met by imposing the minimum statutory damages in the amount of $10,000 for each device sold or distributed to another.

The Court acknowledges that the damages award for each Defendant is a substantial one, especially given that Defendants are private individuals. However, Congress has made the determination that large awards are needed to deter resellers of pirate-access devices. *Adkins*, 320 F. Supp. 2d at 476-77 (Congress's evident purpose to prohibit black market distribution of unlawful decryption devices and punish resellers more harshly than end users prompted the court to award $10,000 per device even though it meant financial ruin). The Court cannot question that judgment where as here, there is no indication that Defendants believed their actions to be legal or that the access devices had a legitimate use.

The Court in its discretion declines to award DIRECTV damages for Defendants' violations of 18 U.S.C. § 2511(1)(a).  As in *Huynh*, "[f]oremost among the court's reasons is that DIRECTV will receive a judgment against [the defendant] for his violation of § 605, a violation premised on the same underlying conduct." *Huynh*, 318 F. Supp. 2d at 1132; *see also Galasso*, 2005 WL 483157, at *2 (declining to award damages under § 2511 since defendant already must pay attorneys' fees and statutory damages for violations of 47 U.S.C. § 605); *McDougall*, 2004 WL 2580769, at *5 (exercising discretion not to award further damages pursuant to § 2511 where defendant had already been awarded $71,000 in statutory damages); *cf. DIRECTV, Inc. v. Braun*, 2004 WL 288805, at *1 (D. Conn. Feb. 9, 2004) (awarding $10,000 in damages under § 2511(1)(a) where there were no damages claimed under 47 U.S.C. § 605(e)(3)(C)(i)).

### C.   Attorneys' Fees and Costs

DIRECTV has also requested attorneys' fees and related litigation expenses pursuant to §§ 605(e)(3)(B)(iii) and 2520(b)(3).  The Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).  DIRECTV has submitted Affidavits Regarding Fees and Costs as well as summaries and itemized billings.  The Court finds that these costs and fees are reasonable and thus enters judgment against Defendants in the amounts specified in the attached chart plus pre- and post-judgment interest.

### D.   Injunctive Relief

Finally, the Court finds that DIRECTV is entitled to the permanent injunctive relief that it has requested in its Complaint and Motions for Entry of Judgment by Default.  The Cable Communications Act permits "final injunctions on such terms as [the court] may deem reasonable to prevent or restrain violations." 47 U.S.C. § 605(e)(3)(B)(i); *see also Kaas*, 294 F. Supp. 2d at 1047.  The Wiretap Act allows "equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1).  DIRECTV claims that

unless restrained by this Court, Defendants will continue to receive and intercept DIRECTV's satellite programming, and thereby cause DIRECTV continued financial and other harm which cannot be quantified. For these reasons, the Court permanently enjoins Defendants from (1) possessing illegal access cards or other illegal devices or equipment; (2) interfering with DIRECTV'S proprietary rights; (3) intercepting, receiving, divulging, or displaying DIRECTV's satellite programming without prior written consent of DIRECTV; and (4) continuing to violate the Cable Communications Act or the Wiretap Act.

## CONCLUSION

For the reasons stated above, judgment shall enter in favor of DIRECTV, Inc., against Defendants for statutory damages and for attorneys' fees and costs in the amounts specified in the attached chart. In addition, each Defendant is hereby permanently enjoined from receiving, possessing, or using any pirate-access device. A separate order shall follow.

| May 9, 2006 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |

## APPENDIX

List of Defendants, Number of Violations, & Judgment Award

| Defendant | Number of Devices Purchased | Damage Award for Violation of § 605(a) | Damage Award for Violations of § 605(e)(4) | Attorneys' Fees and Costs | Total Damages |
|---|---|---|---|---|---|
| Norman Penn | 88 | $1,000 | $870,000 | $850 | $871,850 |
| Terry Baltimore | 64 | $1,000 | $630,000 | $850 | $631,850 |